# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRED W. BOSTON,

               *Plaintiff*,

vs.

BLUE CROSS AND BLUE SHIELD OF
KANSAS, INC.,

               *Defendant.*

Case No. 09-2032-EFM

## MEMORANDUM AND ORDER

This case involves a claim under the Age Discrimination in Employment Act. Plaintiff Fred Boston claims that Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS") discriminated against him on the basis of his age when they failed to promote him to a Vice-President position. Before the Court is Defendant BCBSKS's Motion for Summary Judgment (Doc. 33). The motion has been fully briefed. For the following reasons, the Court grants Defendant's motion.

## I. Facts

Plaintiff Fred Boston worked for Defendant BCBSKS from October 23, 1972 until he voluntarily retired on April 1, 2008. Boston was born in 1948, and he was sixty years old at the time of his retirement. BCBSKS is a mutual insurance company with its headquarters in Topeka, Kansas.

Boston attained a bachelor's degree in 1972. When Boston was hired by BCBSKS in 1972, Boston was initially classified as a District Representative in the Wichita area. Boston changed positions several times but in late 1984, he was promoted to Director - ADS marketing. From 1984

until his retirement in 2008, Boston remained a director of one kind of another and was not promoted beyond the director level.

BCBSKS current President and CEO is Andrew ("Andy") Corbin. He became President/CEO on October 1, 2007, following the retirement of Mike Mattox. Corbin was born in 1949.

Corbin has worked for BCBSKS for twenty-two years. Before becoming President/CEO, he was Vice President of Marketing, Provider Relations and Reimbursement for several years. In that position, Corbin directly supervised Boston, as well as other directors and employees who were assigned to that division.

Fred Palenske is the current Vice President of Provider Relations and Medical Affairs for BCBSKS. Palenske was promoted to that position on October 1, 2007. Palenske was born in 1960.

Palenske began his career with BCBSKS on February 1, 1988. He has a bachelor's degree and a Master's of Business Administration. Palenske was initially classified as a Contract Specialist. By July of 1989, Palenske had been promoted to Manager - Regulatory Compliance. He was then promoted to Director - Regulatory Compliance in July of 1990. He remained in the director position until he was promoted to Vice President.

For the past ten years, BCBSKS has made an effort to consider succession planning. The attention to succession planning began when John Knack was President/CEO and continued under Mike Mattox. Each member of management is asked to consider who might be a likely person to fill their position in the event of retirement, death, or departure from the company. When Boston was asked to identify employees who could eventually take his place, no one suggested to him that he should factor any employee's age into that decision.

Company management recognizes that there are many BCBSKS employees who have worked for the company for thirty or thirty-five years, and that a large number of those employees could retire around the same time, causing a significant loss of important experience. Knowing that a large number of retirements are anticipated, Corbin has been attentive to the need to be prepared for those losses occasioned by retirements. He has focused on knowing which employees might be available to replace those who are retiring, and on improving educational programs for current employees. The President of the Board of Directors has emphasized that the Board wants management to be prepared for retirements by having the right people ready to move forward.

In January of 2007, while Corbin was still Vice-President over Provider Relations, he and Boston went deer hunting in southeast Kansas. During the trip, Boston told Corbin that when he reached age sixty, Boston planned to retire. During this conversation, Boston and Corbin also discussed the potential that Mattox, the current CEO, would retire and what opportunities might be available for Boston because he was interested in taking on more responsibility with the corporation.

In the summer of 2007, Corbin was selected by the Board of Directors to be the President/CEO. Palenske also applied for the President/CEO position. Palenske had received exemplary evaluations as a director and had been identified by his then-supervisor, Bill Pitsenberger, as a future leader for the company.

After Corbin was selected as President/CEO, Palenske requested a meeting with him, in which Palenske indicated his interest in serving in a larger role than he currently held. Palenske shared with Corbin some of his ideas for the future success of the company. Corbin was favorably impressed with Palenske's initiative and interest, and eventually selected him for the Vice President of Provider Relations and Medical Affairs position following the reorganization.

The corporate by-laws permit the President/CEO to select officer positions without posting the open position or having interviews. No one was formally interviewed for the Vice President position. Corbin, in making his decision, also considered Palenske's MBA degree, his prior experience in developing policy, ensuring compliance, and working on legislative issues that affect the company. Other factors included Palenske's oral and written communication skills that would be necessary to supervise a group of directors, including some who thought they should have been selected for the position.

On October 1, 2007, Corbin announced Palenske's promotion.[1] During the two years since Palenske was promoted, he has performed very well. After Palenske was promoted to Vice President Relations and Medical Affairs, Boston reported to Palenske. Boston expressed his disappointment in not being selected for the Vice President position. He did not address any specifics as to why he thought he was not chosen. Other directors in that division also discussed their disappointment that they were not chosen.

Boston's performance continued to be good. Boston was not terminated nor asked to retire. In January of 2008, Boston announced his intent to retire, effective April 1, 2008. Palenske asked Boston if there was anything he could do to change Boston's mind.

When Boston reached sixty, he was eligible for full retirement benefits. Those benefits included a lump sum pension payment of $1,220,559.00, a 401(k) program, and continued payment of seventy-five percent of Boston's health insurance premium, and life insurance. Boston turned sixty in April 2008.

---

[1] With respect to the content of this meeting, the Court will relate those facts below in the analysis section as the parties dispute what was said in the meeting.

-4-

On March 28, 2008, Boston filed a complaint with the Equal Employment Opportunity Commission (EEOC). In this complaint, Boston alleged that he was improperly denied a promotion on October 1, 2007, and that the BCBSKS Board "has stated that the senior staff is aging and there should be a focus on hiring younger vice presidents to balance the age of the staff." There was no reference to any negative age-based comments in the EEOC complaint.

In Boston's role as director, he did not attend meetings of the Board of Directors. Employees who do attend board meetings deny ever hearing that having younger people in key positions is a goal of the Board. When the Board selected Corbin for the position of President/CEO, Corbin was 57 years old.

On July 17, 2008, Boston filed a complaint with the Kansas Human Rights Commission (KHRC). The complaint alleges that Boston was denied a promotion on October 1, 2007 and was subjected to negative age-based comments. The KHRC complaint does not reference statements made by the BCBSKS Board that were included in the EEOC complaint.

Boston filed this lawsuit on January 22, 2009. BCBSKS now seeks summary judgment on the basis that Boston cannot establish the necessary elements of his ADEA claim.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact

---

[2]Fed. R. Civ. P. 56(c).

[3]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

---

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## III. Analysis

In 2009, the United States Supreme Court decided *Gross v. FBL Financial Services, Inc.*,[14] and determined that under the Age Discrimination in Employment Act (ADEA), a plaintiff must establish "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."[15] Recently, in *Jones v. Oklahoma City Public Schools*,[16] the 10th Circuit addressed the effect of the holding in *Gross* with respect to age discrimination claims in this circuit.[17] In discussing the causal standard, the circuit found that it "has long held that a plaintiff must prove but-for causation to hold an employer liable under the ADEA."[18] Therefore, the circuit concluded that "*Gross* does not disturb long-standing Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action."[19] As such, a plaintiff need not demonstrate that age was the sole factor in the adverse employment decision but must instead demonstrate that "age was the factor that made a difference."[20]

---

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]--- U.S. ---, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009).

[15]*Id*. at 2352.

[16] --- F.3d ---, 2010 WL 3310226 (10th Cir. Aug. 24, 2010).

[17]*Id*. at *3-4.

[18]*Id*. at *4 (citing *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir. 1985) (quoting *Perrell v. Financeamerica Corp*., 726 F.2d 654, 656 (10th Cir. 1984))).

[19]*Id*. at *4.

[20]*Id. (*citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)).

The circuit also found that the *McDonnell Douglas* burden shifting analysis remains applicable to age discrimination claims.[21] In determining that the *Gross* decision did not prohibit the use of the *McDonnell Douglas* standard, the circuit reiterated that the plaintiff carries the burden of persuasion throughout the three-step process.[22] It is only the burden of production that shifts at each step.[23] With these principles in mind, the Court will address Plaintiff's age discrimination claim.

When there is no direct evidence of discrimination, the party may carry its burden by presenting circumstantial evidence under the familiar *McDonnell Douglas* burden-shifting framework.[24]

> [T]the plaintiff first bears the burden of establishing a prima facie case of age discrimination. If the plaintiff carries this burden, the employer must then come forward with some legitimate, non-discriminatory reason for the adverse employment action. If the employer succeeds in this showing, the burden shifts back to the plaintiff to show that the employer's proffered justification is pretextual.[25]

### 1. Prima facie case

To establish a prima facie case of age discrimination with regard to a failure to promote claim, Plaintiff must demonstrate that: (1) he was a member of the protected class; (2) he was qualified for the position; (3) despite being qualified, he was not selected; and (4) a younger position was selected for the position [26] Defendant concedes that Plaintiff meets the first, third, and fourth

---

[21]*Id.* at *4-5.

[22]*Id.* at *5.

[23]*Id.*

[24]*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[25]*Id.* (citation omitted).

[26]*Furr v. AT&T Technologies, Inc.*, 824 F.2d 1537, 1542 (10th Cir. 1987).

elements of this test. With respect to element two, Defendant contends that Plaintiff was not the best qualified, but acknowledges that Plaintiff possessed the basic training and experience necessary to perform the duties of the position. In addition, Defendant acknowledges that Plaintiff's burden is slight at the first stage. The Court concludes that Plaintiff has met his burden in establishing a prima facie case.

### 2. Legitimate, nondiscriminatory reason

The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its decision. This is an "exceedingly light" burden."[27] Defendant asserts that the decision maker, Corbin, made the decision to hire Palenske for several reasons including: (1) Plaintiff had told Corbin that Plaintiff planned to retire at age sixty and it would be counterproductive to place an employee in a new position a few months before his retirement; (2) after Corbin became President/CEO, Palenske took the initiative to schedule a meeting during which Palenske offered his ideas about continued successful performance of the company; and (3) Palenske had a MBA degree and superior management skills.

Plaintiff disputes Defendant's reasons by arguing that other than Corbin's testimony, Defendant has not offered any other evidence for its actions and that there is no evidence to support that these reasons were relied upon prior to making the decision to promote Palenske. In addition, Plaintiff contends that the only quality mentioned by Corbin in announcing Palenske's promotion was that Palenske was younger. As Plaintiff is essentially arguing that Defendant's given reasons are false, Plaintiff's argument appears to be better suited for the pretext prong. Defendant's burden at the second stage to offer a legitimate, non-discriminatory reason is "exceedingly light," and the

---

[27]*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007).

Court concludes that Defendant's proffered reasons suffice. Accordingly, Defendant has met its burden in articulating a legitimate, nondiscriminatory reason.

### 3. Pretext

"A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[28]   A plaintiff typically makes a showing of pretext with: (1) evidence that defendant's stated reason is false; (2) evidence that defendant acted contrary to a written policy; and (3) evidence that defendant acted contrary to an unwritten policy or practice.[29]

Plaintiff has presented no evidence that Defendant acted contrary to a written or unwritten policy or practice. Instead, Plaintiff alleges that Defendant's explanation as to why Palenske was hired was not given until after Plaintiff filed his complaint.  However, Plaintiff never made any internal complaint to Defendant that he was the victim of age discrimination.  As Defendant aptly points out, there was no reason why Defendant, which never thought it had discriminated against Plaintiff, would have sought him out to explain its rationale for the decision.  In addition, the fact that Defendant did not explicitly specify every reason for its decision to promote Palenske in public is insufficient to demonstrate that Defendant did not hold those beliefs at the time or that they are unworthy of credence.[30]

---

[28]*Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) (citation and quotation omitted).

[29]*Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[30]Although Plaintiff argues that these reasons are only supported by Corbin's deposition and declaration, the relevant inquiry is Corbin's beliefs as he was the decision maker. Plaintiff has not produced evidence to raise a genuine issue of material fact with respect to these proffered reasons.

In addition, Plaintiff relies upon statements made during Corbin's announcement of Palenske's promotion in an attempt to establish that Defendant's reasons are false. On October 1, 2007, Corbin met with his direct reports and during that meeting, Corbin announced Palenske's promotion to Vice President of Provider Relations and Medical Affairs and Mark Dolsky's promotion to Vice President of Marketing. Plaintiff contends that during this meeting that Corbin stated that the promotions of Palenske and Dolsky met the corporation's goals of "getting younger people in key roles" or "getting younger people in key vice president roles." Corbin denies making the statement. One employee present at the meeting does not recall Corbin making a statement, while another employee recalls Corbin making a statement that "the Board is concerned [BCBS] has employees that have reached an age that is concerning. With these changes, we're younger."

With respect to the promotion announcement, and resolving the dispute in Plaintiff's favor that Corbin made the remark that the promotions met the corporation's goals of getting younger people in key roles, this simply does not demonstrate such weaknesses or implausibilities to render Defendant's legitimate reasons unworthy of belief. "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision."[31] "The relevant inquiry in not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[32] Defendant provided evidence that Corbin considered multiple factors in selecting Palenske, including initiative and educational qualifications. Plaintiff does not dispute Palenske's qualifications nor does Plaintiff contend that he possessed superior qualifications for the job.

---

[31]*Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir 2007) (quotation and citations omitted).

[32]*Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).

Another factor Corbin noted in not considering Plaintiff for the job was Plaintiff's statement to Corbin that he intended to retire when he reached age sixty. Plaintiff does not specifically dispute that he made this comment. Although this may be age-related, whether an employee intends to continue working for the company for the next year appears to be a legitimate consideration when determining appropriate candidates for a position.[33] Plaintiff has provided no evidence to suggest that Corbin did not honestly believe or act in good faith that Plaintiff intended to retire in the near future.[34]

Plaintiff has simply presented insufficient evidence to demonstrate that Defendant's legitimate, nondiscriminatory is unworthy of belief. The evidence Plaintiff presented does not demonstrate or lead to an inference that age was the "but for" factor or "the factor that made the difference" in Defendant's decision. Accordingly, Defendant is entitled to summary judgment.

---

[33]Indeed, age may be a factor, but it is not illegal discrimination unless it is the factor that made the difference in the decision.

[34]Plaintiff also relies on testimony from Steve Dean, another employee of BCBSKS, in which Dean testified that it was his perception that the Vice President applicant was selected because they were maybe a younger person. However, when Dean was questioned about what Corbin said during the October 1, 2007 meeting, Dean could not remember anything that was specifically said. Dean's perception as to Corbin's decision to hire Palenske is also insufficient in establishing pretext.

**IT IS ACCORDINGLY ORDERED** that Defendant BCBSKS's Motion for Summary

Judgment (Doc. 33) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 17th day of September, 2010.

_Eric F Melgren_

ERIC F. MELGREN
UNITED STATES DISTRICT COURT JUDGE